UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-24099-CIV-ALTONAGA/Goodman

AIX SPECIALTY
INSURANCE COMPANY,

    Plaintiff,
v.

AMY DGINGUERIAN, *et al.*,

    Defendants.
_____/

# ORDER

**THIS CAUSE** came before the Court on Plaintiff/Counter-Defendant, AIX Specialty Insurance Company's Motion for Final Summary Judgment [ECF No. 61], submitted with a Statement of Material Facts ("Pl.'s SOF") [ECF No. 62]. The Court has carefully reviewed the Complaint [ECF No. 1], the parties' submissions,[1] the record, and applicable law.

## I. BACKGROUND

This is an insurance coverage dispute. (*See generally* Mot.) Plaintiff seeks summary judgment declaring its Commercial Lines Policy ("Insurance Policy")[2] [ECF No. 1-3] does not provide coverage for the claims asserted in an underlying lawsuit — *Dginguerian v. Porky's Cabaret*, Case No. 18-cv-22231 (S.D. Fla. filed June 5, 2018) ("Underlying Litigation") — brought by the Model Defendants against Cabaret. (*See* Mot. 2). Cabaret and the Model

---

[1] The written briefing following the Motion consists of Defendant/Counter-Plaintiff, Porky's Cabaret, Inc.'s ("Cabaret['s]") Opposition ("Cabaret's Resp.") [ECF No. 68]; Defendants, Amy Dginguerian, *et al.*'s ("Model Defendants[']") Response in Opposition ("Models' Resp.") [ECF No. 71]; Plaintiff's Reply [ECF No. 75]; and Cabaret's Sur-Reply [ECF No. 76].

[2] The provisions in dispute are in the Commercial General Liability Coverage section of the Insurance Policy. (*See* Insurance Policy 30–55).

Defendants argue the Model Defendants' claims are covered. (*See generally* Models' Resp.; Cabaret Resp.).[3]

## A. The Underlying Litigation

The Model Defendants commenced the Underlying Litigation against Cabaret on June 5, 2018, each stating separate claims for (1) violations of the Lanham Act, 15 U.S.C. section 1125(a), for "False Advertising" and "False Endorsement" (Counts I and II); (2) violation of section 540.08, Florida Statutes, "Right of Publicity" and "Unauthorized Misappropriation of Name/Likeness" (Count III); (3) violation of the "Common Law Right of Publicity" for "Unauthorized Misappropriation of Name and Likeness" (Count IV); (4) conversion (Count V); and (5) unjust enrichment (Count VI). (Pl.'s SOF ¶ 3; *see generally* Complaint, Underlying Litigation (hereinafter the "Underlying Complaint") [ECF No. 1] in 18-cv-22231). The Model Defendants claim Cabaret used their images to promote its business without their authorization. (*See* Pl.'s SOF ¶ 4). The parties agree the claims of only one Model Defendant — Sarah Underwood — fall within the time period covered by the Insurance Policy. (*See* Cabaret Resp. 2; Models' Resp. 4 n.2; Underlying Complaint 221–233).[4]

Ms. Underwood is a model, actress, and television host. (*See* Underlying Compl. ¶¶ 281, 283). She has modeled for *Playboy* magazine and appeared in films and several episodes of reality television programs. (*See id.* ¶¶ 282–283). Ms. Underwood alleges Cabaret posted a stolen image of her to its Facebook page on August 26, 2014, to advertise for a "back to school party," implying

---

[3] Cabaret also filed a Second Amended Answer, Affirmative Defenses and Counterclaim [ECF No. 52] seeking a declaratory judgment "determining [Plaintiff] AIX's obligations to defend and indemnify" Cabaret against the Model Defendants' claims. (*Id.* ¶ 69 (alteration added)). Plaintiff filed its Answer and Affirmative Defenses to [Cabaret's] Second Amended Counterclaim [ECF No. 54] on December 12, 2018.

[4] Each Model Defendant brings the same six causes of action against Cabaret. Ms. Underwood's individual claims are located on pages 221–233 of the Underlying Complaint.

Ms. Underwood was a stripper at Cabaret. (*Id.* ¶ 286). She further alleges *Xcitement* magazine posted an image of her on August 26, 2014 as part of an advertisement for Cabaret, insinuating Ms. Underwood was a stripper for Cabaret. (*See id.*). According to Ms. Underwood, Cabaret did not seek permission to use her image, and she was never hired by nor compensated to advertise for Cabaret. (*See id.* ¶¶ 287–290).

### B. The Insurance Policy

From October 15, 2013 through October 15, 2014, Cabaret was insured under the Insurance Policy issued by Plaintiff. (*See* Pl.'s SOF ¶ 1). Under the Insurance Policy, Plaintiff must pay for damages the insured "becomes legally obligated to pay . . . because of 'personal and advertising injury.'" (Insurance Policy § I.B.1.a. (alteration added)). The Insurance Policy defines "personal and advertising injury" to include injury arising out of:

> **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> **f.** The use of another's advertising idea in your "advertisement"; or
>
> **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(*Id.* §§ V.14.d–g). Plaintiff has the "right and duty to defend" the insured against any action seeking damages for personal or advertising injury. (*Id.* I.B.1.a).

As with all policies, there are several exclusions to coverage. (*See generally id.* § I.B.2). Under the "Infringement of Copyright Patent, Trademark or Trade Secret," exclusion ("IP Exclusion"), insurance does <u>not</u> apply to "[p]ersonal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or *other intellectual property rights.*"

(*Id.* I.B.2.i (alteration and emphasis added)).

There are exceptions to the IP Exclusion. First, "other intellectual property rights do not include the use of another's advertising idea in [insured's] 'advertisement.'" (*Id.*). Second, the IP Exclusion does not apply to "infringement, in [insured's] 'advertisement', of copyright, trade dress or slogan." (*Id.* (alterations added)).

Read together, coverage for personal advertising injury *includes* damages arising from (1) oral or written publication that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (2) violations of privacy; (3) use of another's idea in the insured's advertisement; and (4) copyright, trade dress or slogan infringement. And read together, coverage for personal advertising injury *excludes* damages arising from (1) patent, trade mark, and trade secret infringement; and (2) other intellectual property rights. (*See id.* §§ I.B.1.b, I.B.2.i, V.15).

### C.     The Motion

As noted, Plaintiff filed its Motion for Final Summary Judgment on May 17, 2019. (*See generally* Mot.) Neither Cabaret nor the Model Defendants filed cross-motions for summary judgment. On July 9, 2019, Cabaret filed its Sur-Reply to Plaintiff's Motion requesting the Court "deny in its entirety [Plaintiff's] Motion for Final Summary Judgement and, instead, grant summary judgment to Cabaret and order [Plaintiff] to defend and indemnify Cabaret in the Underlying Litigation." (*Id.* 8 (alteration added)). No party suggests there are any triable issues of fact.

## II.     SUMMARY JUDGMENT STANDARDS

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is

entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). If there are any factual issues, summary judgment must be denied and the case proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)).

"When a motion for summary judgment is presented to the Court, it opens the entire record for consideration, and the Court may enter judgment in favor of the nonmoving party on any grounds apparent in the record, even where there is no formal cross-motion." *Mount Vernon Fire Ins. Co. v. Ayala*, No. 15-21427-CIV, 2016 WL 7626205, at *4 (S.D. Fla. May 27, 2016) (citation omitted) (denying plaintiff-insurer's motion for summary judgment on its duty to defend and entering summary judgement in favor of nonmoving defendants). "[G]ranting summary judgment *sua sponte* is entirely appropriate[,]" "so long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted[.]" *Burton v. City of Belle Glade*, 178 F.3d 1175, 1204 (11th Cir. 1999) (alterations added) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)).

### III. ANALYSIS

There are two questions before the Court: (1) whether Ms. Underwood's allegations in the

Underlying Complaint obligate Plaintiff to defend the Underlying Litigation; and if yes, (2) whether Plaintiff must defend *all claims* in the Underlying Litigation. The parties' arguments and the Court's analysis follow.

### A. The Parties' Arguments

Plaintiff argues it has no duty to defend or indemnify Cabaret under the plain language of the Insurance Policy.[5] First, Plaintiff argues 16 of the 17 Model Defendants' claims are for conduct outside the covered policy period — October 15, 2013 through October 14, 2014. (*See* Mot. 12–15). As to the remaining Model Defendant, Sarah Underwood, Plaintiff argues her claims are excluded under the Insurance Policy's IP Exclusion. (*See id.* 15–16).

According to Cabaret, Ms. Underwood's claims are not subject to the IP Exclusion because they may be construed as defamation claims, which are unambiguously covered by the Insurance Policy. (*See* Cabaret Resp. 5–8).[6] The Model Defendants agree Ms. Underwood's claims sound in defamation and argue the claims sound in trade dress infringement and unauthorized use of advertising ideas. (*See* Models' Resp. 4 n.1, 10–11). Additionally, Cabaret and the Model Defendants argue the Insurance Policy is ambiguous or illusory and thus should be resolved in Cabaret's favor. (*See* Cabaret Resp. 8–10, 12; Models' Resp. 6–10). Finally, Cabaret argues

---

[5] The Court only addresses Plaintiff's duty to defend because the duty to indemnify "is not ripe for adjudication until the underlying lawsuit is resolved." *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019) (collecting cases; citations omitted). There may be a narrow exception to this rule where "the allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify," *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001) (citation omitted)), but that is not the case here. Even if it were, the Eleventh Circuit recently noted "to the extent that the exception is persuasive, it would not *compel* the district court to assess [the insurer's] duty to indemnify" prior to the resolution of the underlying litigation. *Mid-Continent Cas. Co.*, 766 F. App'x at 771 (alteration added; emphasis in original).

[6] Cabaret points out Plaintiff fails to address Cabaret's argument the Model Defendants' claims sound in defamation. (*See* Sur-Reply 5). Cabaret argues Plaintiff's failure to acknowledge the defamation argument amounts to a concession. (*See id.*). Plaintiff did not seek leave to respond to Cabaret's Sur-Reply.

because at least one of Ms. Underwood's claims is covered under the Policy, Plaintiff must defend the entire suit. (*See* Cabaret Resp. 10).

B.     **Duty to Defend**

Under Florida law, an insurer's duty to defend depends solely on the facts and legal theories alleged in the pleadings and claims against the insured. *See Stephens v. Mid-continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (emphasis omitted) (quoting *James River Ins. Co. v. Ground Down Eng'g Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008)). "The duty to defend arises when the relevant pleadings allege facts that fairly and potentially bring the suit within policy coverage." *Id.* (quoting *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995)). A determination regarding the duty to defend, therefore, requires the Court "examin[e] the allegations in the complaint filed against the insured." *Lime Tree Vill. Cmty. Club Ass'n Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (alteration added; citation omitted). Importantly, the analysis "turns on the 'grounds for liability' expressed by '*allegations of fact*' in the underlying complaint[]." *Id.* (alteration and emphasis added; citation omitted). A court may look beyond the specific *causes of action* alleged in the complaint, so long as the allegations set forth facts that bring the suit within coverage. *See Psychiatric Assocs. v. St. Paul Fire & Marine Ins. Co.*, 647 So. 2d 134, 136 (Fla. 1st DCA 1994) (finding underlying claims for intentional interference with an advantageous business relationship, intentional infliction of emotional distress, violations of the Sherman Anti-trust Act, and violations of the Florida Antitrust Act fell within "personal injury" coverage defined to include "libel, slander, defamation of character, or invasion of an individual's right of privacy").

Additionally, the duty to defend is "distinct from and broader than the duty to indemnify." *Lime Tree*, 980 F.2d at 1405 (quoting *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d

810, 813–14 (Fla. 1st DCA 1985). "Thus, an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy." *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1149 (11th Cir. 2010) (quoting *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 695 So. 2d 475, 476 (Fla. 3d DCA 1997)).

Finally, where the underlying complaint "alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit." *Nat'l Builders Ins. Co. v. RQ Bldg. Prod., Inc.*, No. 17-61474-CIV, 2018 WL 4846410, at *1 (S.D. Fla. Oct. 5, 2018) (quoting *Lime Tree*, 980 F.2d at 1405) (emphasis removed). But, "if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend." *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35 (Fla. 4th DCA 2003) (citation omitted).

### C. Claims Covered Under the Insurance Policy

As noted, Ms. Underwood alleges violations of the Lanham Act; a violation of the right of publicity; unauthorized misappropriation of name or likeness under section 540.08, Florida Statues; and a violation of the common law right of publicity.[7] If a fair reading of the factual allegations underlying her claims shows any of them falls within the damages covered by the Insurance Policy, Plaintiff has a duty to defend Cabaret.

To "determin[e] the potential for coverage," the Court "lay[s] the allegations of the complaint against the terms of the policy." *Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1336 (S.D. Fla. 2001) (alterations added; citation omitted). The "interpretational analysis begins with the basic legal principle in Florida that insurance contracts

---

[7] The parties do not appear to dispute Ms. Underwood's claims for conversion and unjust enrichment are not claims that fall within the Insurance Policy's "personal and advertising injury" coverage. (Insurance Policy I.B.1).

are to be construed in accordance with the plain language of the policies as bargained for by the parties, with any ambiguities interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy." *Id.* (citations omitted). On a close reading of the Underlying Complaint, the Court agrees with Cabaret that the factual allegations trigger coverage for "advertising injury" "arising out of . . . oral or written publication . . . of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services." (Insurance Policy § V.14.d)

According to Cabaret, the underlying claims "sound in defamation." (Cabaret Resp. 5). To state a claim for defamation in Florida, Ms. Underwood would need to show Cabaret (1) made a statement; (2) that was false; (3) to a third party; and (4) Ms. Underwood suffered damages as a result. *See Carlson v. WPLG/TV-10, Post-Newsweek Stations of Fla.*, 956 F. Supp. 994, 1006 (S.D. Fla. 1996) (citation omitted). As Cabaret correctly recognizes, a defamatory statement may be made by implication. This may occur, for instance, where a literally true statement or photograph is "juxtaposed in such a manner as to create a false impression." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (citing Restatement (Second) of Torts § 652E cmt. B); *Coton v. Televised Visual X-Ography, Inc.*, 740 F. Supp. 2d 1299, 1302–07 (M.D. Fla. 2010) (finding the defendant defamed the plaintiff by implication where it used her self-portrait on the packaging of a pornographic movie, improperly suggesting her association with the pornography industry).

Turning to the Underlying Complaint, Ms. Underwood alleges Cabaret published a "stolen image of Underwood" on its Facebook page to advertise for a "back to school" party. (Underlying Complaint ¶ 286). She alleges Cabaret used the picture "to intentionally give the impression that Underwood is either a stripper working at the strip club or that she endorses [Cabaret]." (*Id.*

(alteration added)). According to Ms. Underwood, this publication "impugns [her] character, embarrasses her and suggests – falsely – her support for and participation in the strip tease industry." (*Id.* ¶ 294 (alteration added)). She further alleges Cabaret's publication "has caused irreparable harm to [Ms. Underwood's] reputation and brand by attributing to [her] the adult entertainment and striptease lifestyle and activities at [Cabaret's] strip club." (*Id.* ¶ 1351 (alterations added)).[8]

Read together, these statements satisfy the elements of a defamation claim under Florida law: (1) Cabaret made a statement — the advertisement; (2) that was false — by associating Ms. Underwood with Cabaret or the striptease lifestyle; (3) to a third party — any person who viewed the Facebook page; (4) which has resulted in harm to Ms. Underwood's reputation by "impugn[ing] her character." (*Id.* ¶ 294 (alteration added)). That Ms. Underwood does not bring a specific cause of action for "defamation" or "disparagement" does not matter. Analysis of the duty to defend turns on the fairly read "grounds for liability expressed by *allegations of fact* in the underlying complaint[]" — not the specific label of the cause of action. *Lime Tree*, 980 F.2d at 1405 (emphasis added; internal quotation marks and citation omitted).

*Psychiatric Associates*, 647 So. 2d at 137–138, illustrates this principle. In *Psychiatric Associates*, the plaintiff in the underlying matter — a physician — brought five "relatively

---

[8] Cabaret also argues the Underlying Complaint's phrase "hampering efforts by Underwood to continue to protect her reputation for high quality professional modeling, resulting in a loss of sales thereof . . ." may be construed as a claim for defamation. (Cabaret Resp. 6 (alteration added; quoting Underlying Complaint ¶ 1365)). This argument fails to persuade. The complete allegation, of which Cabaret only quotes part, states: "Further, any failure, neglect, or default by [Cabaret] *will reflect* adversely on Underwood as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Underwood to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to the legitimate mainstream media, and to the irreparable harm of Underwood." (Underlying Compl. ¶ 1365 (alteration and emphasis added)). This allegation is stating *future* conduct by Cabaret could harm Ms. Underwood and therefore, unlike the other allegations cited by Cabaret, does not state Cabaret *has* defamed Ms. Underwood.

10

unartfully drafted counts," *id.* at 135, against the insured — a professional association — for "intentional interference with an advantageous business relationship" (Count I), "intentional infliction of emotional distress" (Count II), violations of sections 1 and 2 of the Sherman Antitrust Act (Counts III and IV), and violations of the Florida Antitrust Act (Count V), *id.* at 136. The insurance policy covered "personal injury," defined to include "libel, slander, defamation of character or invasion of an individual's right of privacy." *Id.* The insurer argued the plaintiff's claims were not covered pursuant to a "professional services" exclusion[9] and alternatively argued even absent the exclusion, the claims would not "fall within the terms of the 'personal injury' coverage." *Id.* The court disagreed, finding "at least some of the wrongs alleged in [the physician's] complaint [fell] within the 'personal injury' coverage of the policies" and "[the physician's] complaint may fairly be read as alleging that he has suffered mental and emotional anguish, humiliation and injury to his reputation as a result of the insureds' actions." *Id.* at 138 (alterations added).

So too here, Ms. Underwood has alleged reputational harm and the other elements sufficient to state a cause of action for defamation. This moves her claims within the ambit of the damages covered by the Insurance Policy. *C.f. Spaulding Decon, LLC v. Crum & Forster Specialty Ins. Co.*, 158 F. Supp. 3d 1293, 1297 (M.D. Fla. 2016) (finding no duty to defend an "offense" defined to include material that "slanders or libels a person or organization or disparages a person's or organization's goods, products or services" where the insured used the "buzz word" "disparaging" but did not actually allege disparaging conduct or statements (alteration added)).[10]

---

[9] The court construed the "professional services" exclusion in favor of the insured, finding the insurer's construction "would result in the virtual emasculation of the policies . . . ." *Id.* at 138 (alteration added).

[10] *Psychiatric Associates* and the present case are distinguishable from cases finding no duty to defend artfully plead claims using "buzzwords" to trigger coverage. *See id.*; *see also Amerisure Ins. Co. v. Gold Coast Marine Distributors, Inc.*, 771 So. 2d 579, 582 (Fla. 4th DCA 2000). As in *Spaulding*, the court in

Accordingly, the Court construes the Underlying Complaint as containing grounds for liability expressed by allegations of fact that are sufficient to state a cause of action for defamation.[11]

### D. The Intellectual Property Exclusion

Plaintiff argues Ms. Underwood's claims for violation of her publicity rights are intellectual property claims subject to the IP exclusion. (*See* Mot. 15–16). Plaintiff is correct there "appears to be no dispute that the right of publicity is a type of intellectual property right." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1323 (11th Cir. 2006). Nevertheless, Cabaret is not deprived of a defense because Ms. Underwood's allegations of fact sounding in defamation are couched within claims for publicity violations.

In this respect *Lime Tree* is instructive. In *Lime Tree* the insurer argued it had no duty to defend because the allegations in the underlying complaint — for discrimination, breach of a development's covenants and restrictions, false and malicious slander or displacement of title, restraint of trade, and a request for a declaratory judgment that the restrictions were null and void — were for intentional acts excluded by a "Business Liability" exclusion. *See* 980 F.2d at 1405. The insurer emphasized the underlying complaints stated the insured "committed these acts

---

*Amerisure* found no duty to defend an "advertising injury" — defined as "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" — even where the underlying complaint used the word "defamation" and alleged "damage to business reputation" because there were no actual allegations the insureds made false statements to a third party. *Id.* at 581 (alteration added). The court noted the insureds argued, incorrectly, that they need *not* "establish all the elements necessary to constitute a cause of action for libel and slander in order to trigger the duty to defend." *Id.* at 582. Here, the situation is the opposite, and more akin to the "unartfully drafted" counts in *Psychiatric Associates*. The Underlying Complaint contains factual allegations that satisfy each element of a defamation claim even though it fails to use the term "defamation."

[11] Again, the Court notes Plaintiff does not respond to Cabaret's argument the Underlying Complaint states facts supporting a cause of action for defamation. Cabaret argues this silence amounts to a concession. (*See* Sur-Reply 5). Because the Court agrees with Cabaret that Ms. Underwood's allegations of fact sound in defamation, the Court does not address this argument.

knowingly" and the general allegations were "realleged and incorporated by reference throughout the individual counts." *Id.* Therefore, according to the insurer, the underlying complaints only alleged causes of action that were excluded. *Id.* The Eleventh Circuit disagreed, finding despite the allegation of intentional acts, the complaint still "set forth grounds, other than intentional acts and discrimination, upon which [the insurer] could be held liable." *Id.*

Similarly, here, despite the allegations of publicity violations, Ms. Underwood's complaint still sets forth grounds, other than those triggering the IP exclusion, upon which Plaintiff could be held liable. *See id.* at 140. Stated otherwise, because the Underlying Complaint sets forth grounds for a defamation claim and the Insurance Policy unambiguously covers injury arising from "oral or written publication that slanders or libels a person," Plaintiff has a duty to defend.[12]

### E. Plaintiff's Duty to Defend the Remaining Claims

It is well settled the duty to defend one claim in a suit against the insured compels an insurer to defend the entire case. *See Travelers Prop. Cas. Co. of Am. v. Kansas City Landsmen, L.L.C.*,

---

[12] Plaintiff's reliance on *Aroa Marketing, Inc. v. Hartford Insurance Company of the Midwest*, 198 Cal. App. 4th 781 (Cal. Ct. App. 2011), a non-binding California state court case, is misplaced. The *Aroa* plaintiff, a model, sued the insured marketing company for statutory and common law misappropriation of likeness where the marketing company used her photograph to advertise certain products without the plaintiff's authorization. *See id.* at 785. The plaintiff claimed association with the products "diminished her marketability and publicity value as a professional actor and model." *Id.* As in this case, the insurance policy excluded coverage for claims arising out of intellectual property rights, but that is where the similarities end.

First, the insured argued the plaintiff's claims should be construed as *privacy* claims – not claims for defamation or disparagement. *See id.* at 786–788. The court agreed the plaintiff's publicity claims could be construed as a subset of privacy claims but found this subset was specifically excluded by the intellectual property exclusion. *See id.* at 788. Second, the court rejected the insured's theory the plaintiff's claims "implicat[ed] more than her right of publicity" and her claim "could have been[] based upon an injury to [the plaintiff's] feelings or her peace of mind." *Id.* (alterations and emphasis added). Importantly, the court reviewed the complaint and found the plaintiff "did *not* seek damages for misappropriation that injured her feelings," *id.* (emphasis added) — a requisite showing for the alternative, non-publicity claim. In the present case, Ms. Underwood *has* shown her claims implicate more than the right of publicity because she sets forth factual allegations satisfying each element of a defamation claim.

592 F. App'x 876, 882 (11th Cir. 2015) (citation omitted); *Lime Tree*, 980 F.2d at 1405 (citation omitted). "In some situations insurers may be required to defend claims for which they cannot be held liable." *Cape Coral Med. Ctr., Inc. v. Am. Cont'l Ins. Co.*, No. 98-230-CIV-FTM-19D, 2000 WL 151275, at *2 (M.D. Fla. Feb. 4, 2000), *aff'd sub nom. Cape Coral Med. Ctr. v. Am. Cont'l*, 251 F.3d 161 (11th Cir. 2001). This principle requires Plaintiff to defend all claims in the Underlying Complaint. [13] *See Amerisure Mut. Ins. Co. v. Summit Contractors, Inc.*, No. 8:11-CV-77-T-17TGW, 2013 WL 12366978, at *11 (M.D. Fla. Mar. 20, 2013) ("Where some facts alleged are within the coverage provided, but others are not, a carrier has a duty to defend the entire case.").

*Hartford Accident & Indemnity Company v. Beaver*, 466 F.3d 1289, 1291 (11th Cir. 2006), compels this conclusion. There, the Eleventh Circuit reversed the district court's opinion finding no duty to defend a class action complaint. *See id.* at 1298. The lower court found the named plaintiff's claims (like the remaining Model Defendants' claims here) fell *outside* the policy coverage period and, although some of the potential class members' claims fell *within* the coverage period, the class was not yet certified. *See Hartford Acc. & Indem. Co. v. Strugnell*, No. 99-CV-1546-T-30TGW, 2004 WL 2249398, at *2 (M.D. Fla. Sept. 30, 2004). In reversing, the Eleventh Circuit found the underlying complaint alleged the potential for class certification, which was enough to "fairly and potentially bring the suit within policy coverage." *Beaver*, 466 F.3d at 1289.

---

[13] The Court notes the parties' memoranda on this point are not fully developed. The Model Defendants "request the Court deny [Plaintiff's] motion as to the coverage it is obligated to provide to [Cabaret] for the claims brought by *Sarah Underwood*." (Models' Resp. 11 (alterations and emphasis added)). Cabaret states Plaintiff "must provide a defense of the *entire suit*" (Cabaret Resp. 10 (emphasis added)) but also argues "the [Insurance Policy] covers the underlying claims of Ms. Underwood; and [Plaintiff] has a duty to defend and indemnify Cabaret *against such claims*" (*id.* 12 (alterations and emphasis added)). Thus, Cabaret is unclear whether it is arguing Plaintiff must defend *all the Model Defendants' claims or all of Ms. Underwood's claims*. Plaintiff fails to address the possibility the Court could find (as it has) Ms. Underwood alleges fact bringing her suit within coverage, and the consequences of this finding with respect to the remaining Model Defendants' claims. Because the Court's independent research finds Plaintiff's duty to defend Ms. Underwood extends to *all* claims in the Underlying Litigation, further briefing was not requested.

This triggered the duty to defend the entire class, including the named plaintiff whose claims were not within the coverage period, and any of the potential class members in the same position. *See id.* at 1291–93.

Similarly, here, because Plaintiff has a duty to defend Ms. Underwood given her allegations bring the Underlying Litigation within coverage, Plaintiff must defend all the Model Defendants' claims. Notably, Plaintiff's duty to defend exists only so long as the covered factual allegations remain at issue. "[I]f the covered claim fall[s] out of the dispute," Plaintiff "may withdraw from the defense." *Cape Coral Med. Ctr., Inc.*, 2000 WL 151275, at *2 (citing *Harborside Refrigerated Servs., Inc. v. IARW Ins. Co., Ltd.*, 759 F.2d 829, 830 (11th Cir. 1985) (alterations added; applying Florida law; other citations omitted).

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Final Summary Judgment **[ECF No. 61]** is **DENIED**. Plaintiff has a duty to defend the Underlying Litigation. Judgment will be entered by separate order in favor of Cabaret and the Model Defendants.

**DONE AND ORDERED** in Miami, Florida, this 20th day of September, 2019.

*[signature]*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record